We'll hear argument next in Case 23-971, Weitzig v. Halliburton Energy Services. Mr. Levy? Mr. Chief Justice, and may it please the Court, as every federal circuit to have considered the question held until the decision below, Rule 41 voluntary dismissals without prejudice may be reopened under Rule 60B because they are final proceedings or final judgments. To start, a voluntary dismissal is a proceeding or a judgment. The phrase judgment, order, or proceeding in Rule 60B was taken in 1937 from Section 473 of California's Code of Civil Procedure. And at the time, California Supreme Court had interpreted Section 473 to cover all steps in litigation and it had specifically applied Section 473 to voluntary dismissals. These authoritative California decisions were carried into Rule 60B and they are consistent with dictionary definitions of the terms proceeding and judgment. Next, a voluntary dismissal is also final. Some courts, after adoption of the rule, initially read it to constrain their authority to revise interlocutory matters and the advisory committee thought this was wrong. So it added the word final to confirm that Rule 60B comes into play only when a court lacks inherent authority to modify a matter as interlocutory. But a dismissal terminates a case so it cannot be modified using the court's inherent power and it is therefore final for Rule 60B purposes. That conclusion again is confirmed by contemporaneous dictionary definitions. Respondents mostly avoids these points. It leads by asking the court to affirm on the new theory that the district court lacked jurisdiction to vacate an arbitration award after reopening the case. This objection is not covered by the question presented and presents no obstacle to resolving it and the argument will fail on remand because it misreads Badgeroe and Kekkonen which are the two cases my friends rely upon. And when it comes to the question presented, respondent offers no cogent response to the dictionary definitions, the California decisions or the advisory notes. The court should reverse. I welcome the court's questions. Didn't the 10th Circuit also treat this as jurisdictional? The 10th Circuit treated the decision, the issue of whether Rule 60B could be, whether the case could be reopened as going to the jurisdiction of the court to vacate the award. And therefore there are two effectively threshold issues that could be resolved. And under Sinekim, of course, there's no sequencing to jurisdictional issues which is, I think, the point that Justice Gorsuch made in the dissent that we cite in our briefs where if there are two jurisdictional issues and the court grant, or two issues that are threshold and go to a court's jurisdiction and the court grants review to decide one of them, it should decide that question and the other jurisdictional issues or issues going to jurisdiction remain for remand. So do you agree that it's jurisdictional or is it simply an application of 60B? I do not agree that it's jurisdictional. I think it's about the application of Rule 60B and if relief is granted, then the case is reopened and there is jurisdiction. But the question that is itself presented, I would characterize as a threshold issue in the same way as in Sinekim, for non-convenience was a threshold issue which was not jurisdictional. Your friend suggests that the reason that you're going through this process after voluntarily dismissing the case, now trying to revive it, it's an ADA claim that you've lost in arbitration and it's a way to try to bring a collateral attack on the arbitration award. Is that what's going on? Well, there was a motion to reopen the case and to vacate the award and the case was then sent back to arbitration. So the motion was a challenge to the arbitration award. Okay. But isn't it a separate motion? I mean, there's a motion to vacate but there's also a motion to reopen and the court would have to make two independent determinations regarding that, correct? The district court treated it as two issues, entered two orders. They are both attached to our petition. The first order chronologically was to reopen the case under Rule 60B and then later, having reopened the case, the court vacated the arbitration award. And here, we're just concerned about the propriety of the first issue. That's right. Well, your friend on the other side is concerned about a little bit more than that and he says, I mean, what is the reason for what you're doing if not to collaterally attack the arbitration award? Well, I think that goes to the, I agree the motion was filed and the reopening was done to vacate the award. Those are, those go to two different, they don't go, those issues do not go to the question presented. They go to number one, whether the court was right to grant relief under Rule 60B. I note that that issue was not addressed by the court itself in the majority opinion, although the dissent would have affirmed the district court's grant of relief under Rule 60B-6. And so on remand, my friends can argue that the 60B ruling, the exercise of discretion by the district court should be vacated as an abuse of discretion. And then of course, there will be the separate issue on remand to the extent arguments have been preserved as to whether the separate order vacating the award should be affirmed. Right, but I mean, I'm just trying to get a handle on why we're going through all this. And the arbitration award has been confirmed in court, right? It has not been confirmed. Okay, but there is a proceeding to do that or are you challenging that independently? What happened is there was an arbitration award and there was a motion filed by my client to reopen the case and vacate the award. And then that award was vacated and then the matter was appealed. Well, and so your friend is wrong to suggest that the reason, I mean, the ADA claim was resolved in the arbitration. Now, if it's going to be challenged, it should be challenged in that forum, no? Well, there's a motion under, arbitration awards would be subject to challenge under the FAA and the court, the district court here determined that those grounds were satisfied and that the arbitration award should be vacated and did vacate the award. Well, your dismissal was a voluntary dismissal, right? So you should have, you could have challenged the arbitration award independently at that point, right? There's no, why do you, why is it necessary for you to vacate your voluntary dismissal to restore that action as opposed to bringing an independent action challenging the arbitration award? So sequentially, my client filed an ADA case. My, Halliburton argued that the case should be arbitrated, asked that the case be dismissed and sent to arbitration. My client withdrew the case at that point without prejudice, although it was after the limitation period had lapsed and went to arbitration. The arbitration proceeded, an arbitration award was rendered and my client then challenged the award by going back to court and saying, we would like to reopen the case and have the arbitration vacated under section 10 of the FAA. At that point, the district court said that it had, that the case had been dismissed and issued an order to a cause asking how it had jurisdiction. My client pointed to rule 60B1 and six as grounds to reopen the case and that's the path that the district court took. It entered one order reopening the case and then after that occurred, entered another order vacating the award. When the case went up on appeal, all those issues were presented. Well, but if, why, your voluntary dismissal was without prejudice, right? Why do you have to reopen that? Can't you just bring another proceeding? Well, no, because of the limitation periods. So this is a way of avoiding the statute of limitations. Well, it's an application arguing that the application of the limitation periods to this case is inequitable given the circumstances of the case, which is an argument that the district court accepted in granting relief under rule 60B6 and B1 as well. But under B6, that was the ground that the dissent would have affirmed and so on remand, that will be whatever arguments remain as to whether the reopening of the case under rule 60B6. I'm sorry, just trying to get a handle on exactly what happened. If you had filed another ADA challenge, that would have been barred by the statute of limitations. That's right. So you're reopening your voluntary dismissal to avoid that consequence. It's, well, a new case could not have been filed on the merits because the limitation period, and a new application under the FAA also could not have been filed because that has also a limitation period of 90 days. And so considering all these factors, the law and the other issues that are discussed by the district court, the district court reopened the case. And that is an issue that is, A, not jurisdictional, B, was not addressed below, and C, could be considered on remand. Counsel, I see two jurisdictional issues here. One, what's the district court's jurisdiction? What's the subject matter? What gives its subject matter jurisdiction to consider the 60B motion at all? And the second jurisdictional issue I see is what gives it subject matter jurisdiction to vacate an arbitrable award? So they chose to go the 10th circuit on the 60B. That's what we granted cert on. And so I'm assuming that you must think that the jurisdiction over the motion to reopen stems from the original ADEA case? That's right. All right. So that has been opened. What would have given the district court jurisdiction to vacate an arbitrable award? Because I don't think the jurisdiction that's granted by the federal statute, or the ADA, is simply to order parties to go to arbitration. So what gives its subject matter jurisdiction to vacate the award? Well, once the case is reopened, it's a federal case, and our first, it has jurisdiction because of that. It has jurisdiction to reopen the ADEA case, but this is no longer an ADEA case. So. At least the motion to vacate is not related to anything that's happened in the rights and responsibilities between the two of you with respect to the claim. Well, it's related in the sense that it, as the court looked at the question in Badger O, the question of a motion to vacate an award, and there, of course, the merits were not before the court, it was a standalone motion to vacate. And that was the premise of the question. And the court said, in that circumstances, you need independent subject matter jurisdiction. It didn't speak to whether if the case, the merits were before the court, and the case were reopened, there would be a need for independent, for subject matter jurisdiction. Justice Breyer, in dissent, noted there may not be. And I didn't read the opinion of the court to say otherwise. Coconut itself, upon which Badger O was based, made very clear. Well, assume that, if you assume that I think that Badger O would prevent you from just relying on the federal statute to vacate the arbitration award, my understanding of the facts here is that you're going to try to get in through diversity, is that right? We do have diversity. The amount of controversy was not pleaded, and whether the court would forgive that is a matter below. Uh-huh, and if, at any rate, even if you can't, even if you don't have jurisdiction to vacate the arbitration award, because Badger O says you can't do it based on the federal statute, and they're not going to allow you to replete your diversity claim, even assuming that, I take it that what you're saying is that the jurisdictional question as to 60B is entirely different. That's exactly right. None of these issues are obstacles to resolving the question presented. I'm just taking them as given, of course. Yeah, I mean, I think you have a tough road to hoe on the Badger O question, honestly, but that doesn't seem to be the jurisdictional question that's in front of us. I will say that the courts of appeals after Badger O have split on the question as to whether if a case remains open, there is a basis to vacate an award with the Seventh Circuit and the Third Circuit saying you do not need an independent basis, and the Fourth Circuit coming out the other way, that may be the next case. Okay, but I guess regardless is what I'm saying, even if I disagree with you, or however hard or easy that question might be, your real contention here is that this is a different jurisdictional question, and that the Badger O question can be decided at some place down the road. That's exactly right, and in terms of the question presented, the text is clear, and the California courts are clear, that proceedings and judgments are to be, proceedings are to be interpreted broadly. Judgments at the time the rules were enacted included voluntary dismissals. The California Supreme Court interpreted the same words to include voluntary dismissals, rejected the argument that voluntary dismissals could not be reopened because it was voluntary. The point is. Mr. Levy, on that, your reading hinges on proceeding, places a lot of weight there. I wonder though, what wouldn't be a proceeding on your theory? I know what an order is, I know what a judgment is, but is a proceeding every docket entry? And if it is, then why do we have order and judgment if we created a problem where they're rendered meaningless? Well, I think the way the statute was written was to go from narrower to broader, because every judgment is also an order, and the way the courts interpreted proceeding would include orders and judgments. Yeah, does it swallow the whole thing though, and does that create a problem? And what wouldn't be a proceeding? Well, I think it's a belts and suspenders approach to making sure that there was broad authority. So yes, it does swallow it, but we should overlook that. Well, it's a virtue. It's a virtue, not a vice, okay, all right. Got it, I got it, I think. And then Microsoft, how do you deal with that, where this court said that a dismissal with prejudice wasn't a final decision for purposes of 1291? So I think this goes to an argument my friends make, which is to try to import the concept of finality from appeals to 60E. And I think a couple of points in response, and we make them in our brief. The first one is that the rule makers used different words. They didn't use final decisions, final decisions subject to appeal. They made very clear initially that it covered whatever California covered, which is everything. And then the word final was added later to make clear that the court's authority over interlocutory matters was not constrained. So that history and where the words come from impart a very different meaning. So that's number one. Number two. Okay. Judge Matheson's dissent and his boomerang theory of finality, which he seemed to embrace, and so I don't mean it pejoratively, but that things can become final. You didn't make that argument here. You're asking us, as I understand it, to hold that there was always a final proceeding. It didn't mature into finality due to later events. Is that right? So ours wins under both standards, and we had endorsed, I think, something closer to Yesh from the Fifth Circuit, which looks at finality when made, but we would win under Judge Matheson. You'd take it if you had to. Got it. And as I mentioned, if finality turns on limitation period, in this case, when the dismissal was initially made, the limitation period's already applied. So even that standard would be met. Thank you, Mr. Levy. Can you walk us through the enactment history, and in particular, the significance of the addition of final? So initially, as I said, in 1937, the rule covered judgments, orders, or proceedings. The advisory committee notes make clear that's taken from the California decisions, and Professor Moore has said in various places at the time that the California decisions are authoritative. Between 1937 and 1946, some courts were beating Rule 60B to apply to interlocutory matters, so that if a decision were made or an order were taken along the way that- In an open pending case. In an open pending case, that the movement would have to show mistake, fraud, or the like under Rule 60B, and otherwise, the court would be without authority. And Professor Moore, in the article that is referenced in the advisory committee notes, says that's wrong, because as this court had said in 1922 in John Simmons' company case, courts retain plenary inherent authority to revisit interlocutory matters, and that's how it should be. And so for that reason, Professor Moore recommended, and that was ultimately taken up, that the word final be added to Rule 60B, not to limit Rule 60B, but rather to make sure that interlocutory matters would always be subject to reopening, unconstrained by Rule 60B. And how is it that Respondent's argument is using final to limit? Well, I think the Respondent have said final means res judicata effect, or Respondent, or that final means- That must affect the parties. It's the sort of certain kinds of proceedings is what Respondent uses final to do, and that therefore limits the district court's ability to address after the fact those kinds of cases. That's right, I think my friends are trying to inject in the first step of whether Rule 60B is even available, a test as to whether there's an effect on the legal rights, when the intent was clear to make 60B as broad as possible in terms of which orders, matters, or proceedings could be reexamined, and to make very clear that the circumstances in which they could be reexamined would be narrow, and they would have to meet the 60B one through six test in the courts, in the discretion of the district court. And you read orders, judgments, and proceedings not as some sort of strict list, but really Congress trying to say pretty much everything, waterfront. That's right, and that's how the California Supreme Court interpreted it under the court's decision in Hall versus Hall, the court takes notice when the advisory committee notes, takes a provision from a statute or other source, puts it into the federal rules, and holds that that is intentional, and carries the soil with it. At least as a presumptive matter, the decisions of the California Supreme Court interpreting proceeding to cover everything, and specifically applying their version of the code, which had the same operative language, to cover voluntary dismissals, is strong evidence that that was intended by the rule makers. And of course, we also rely on the word judgment, and not just proceeding, because as I said at the time, judgments were defined to include voluntary dismissals, and that was the settled meeting in 1937. That's the way California Supreme Court talked about it too. Can I go back a bit to Justice Gorsuch's question? There's some superfluity in your definition, but there is also in the other sides, because every proceeding would encompass a judgment and an order, correct? That's right. Or a judgment and order, because they require there to be some sort of judicial intervention, as I understand, that would mean that every proceeding would encompass this judgment and orders as well, and vice versa. I think that both interpretations, and all the interpretations we've seen, have some surplusage, and in that circumstance, the court has said the candidate against surplusage doesn't apply. What I will say is, we do give independent meaning to judgment, order, and proceeding, because they don't all mean the same thing in our view of the world. Well, and you have some support for that, because one of the provisions of this act talks about the date of the proceeding, as opposed to the entry of the judgment or order, correct? That's right, that's Rule 60-C-1. All right. With respect to this question of finality, the other side relies very much on the definition of 1291, and 1291 doesn't seem quite as apt an analogy to me as one would think, because that has to do more with what is the jurisdiction between a district court and an appellate court, and that's very different here, because this is about the jurisdiction of a district court, correct? That's exactly right. And so, I guess, when you're pointing to the California cases and to the advisory notes, you're saying you should look at finality in the way that Congress was using it, which is case-ending finality, rather than legal determination finality, correct? We're looking, we do endorse the case-ending finality concept, and also whether, as Professor Moore stated, there is inherent authority to modify. It can't be the ending of the controversy, because otherwise there wouldn't be jurisdiction, which they admit there is, if a court signs a judgment dismissing without prejudice, which it does regularly, that doesn't end the legal responsibility between the parties, correct? That's right, and there are many orders that are deemed final for appellate purposes or otherwise that can be refiled, that are nonetheless deemed final, because they terminate the case, and the court has said that in its decisions interpreting the appellate statutes, which. Thank you, counsel. Thank you, counsel. Justice Thomas? Justice Sotomayor, anything further? Justice Kavanaugh? Justice Jackson? Thank you, counsel. Mr. McGill? Thank you, Mr. Chief Justice, and may it please the court, I want to start with the question of jurisdiction. We know from Badgero that a Section 10 motion to vacate under the Federal Arbitration Act requires its own basis for federal jurisdiction. We know from Kekkonen and Rule 82 that Rule 60 cannot extend the jurisdiction of the district court to new forms of relief, such as a motion to vacate an arbitral award. Petitioner needs a basis for his Section 10 request, but Rule 60 can't supply it, and that was the only basis for jurisdiction ever presented below. That's the argument that there's no jurisdiction here. On the merits, I want to point to three major problems with petitioner's construction of Rule 60. First, we have a good for only Rule 60 definition of finality. That runs into two really big problems. The first is that Rule 60 interacts with Federal Rule of Appellate Procedure 4, to toll the deadline to file a notice of appeal. If finality means something different under Rule 60 than it does under Rule 4, we're going to have confusion where confusion is least desirable, the time and deadline to file a notice of appeal. The second point is because a rule, the denial, or grant for that matter, of a Rule 60 motion is itself an appealable final order, this would, his definition of finality, my friend's definition of finality, would allow a litigant to bootstrap himself into an appeal from an otherwise unappealable order. His definition of proceeding means that prior to 1946, every docket entry could have been subject to a Rule 60 motion, even a complaint, or a notice of appeal. Our reading of the statute reads, judgment, order, and proceeding in harmony. It does not, one does not subsume the other. And the last point that I would make is the petitioner's definition here takes no account of the Rule 60's key verb, which is to relieve. There has to be some burden for the court to relieve, and a voluntary dismissal without prejudice that leaves the plaintiff free to refile his claims at any time in any court does not impose any legal burden for a court to relieve. I welcome the court's questions. So do you think that finality is consistent across all of the federal rules of civil procedure? I believe that with respect to Rule 60 at least, it has to have the same definition as final orders under Rule 1291. Otherwise, for instance, the petitioner's definition could take no account of collateral orders. The time to appeal a collateral order runs from the date of the order. However, under his view, because a collateral order doesn't terminate a case, it's not subject to Rule 60 relief, and it couldn't benefit from the tolling that FRAP 4 provides for motions filed under Rule 60. And also, this court's decision in Stone v. INS, which we cite in our red brief, elaborates on how Rule 60 and the rules of appellate procedure work together to define the time to file a notice of appeal. His definition of finality is going to create confusion where it is least desirable and where clarity is most needed. What do we do about the fact that there is evidence in this sort of record of proceedings that indicates that the committee here was inserting final for a particular reason? I mean, are you asking that we just ignore the committee notes and the enactment history which suggests that whatever finality means in 1291, here it was doing particular work? Not at all, Your Honor. So, the finality requirement comes in in 1946. In 1946, final, when used to describe a judgment or order, had a very particular meaning that came from this court's appellate jurisdiction cases going back to the founding. Do you dispute his recitation of the facts with respect to why the committee put final in this particular rule? It's not false, but it's not entirely true, Your Honor. So, what the advisory committee note explains is that the finality requirement was doing two things. One is it wanted to make clear that for final judgments, orders, and proceedings, there was one way for them to be revisited, and that was through the federal rules of appellate procedure. Gone were the writs of quorum nobis, quorum vobis, audit querella, and other things shrouded in lore and mystery. The second point, which was related to the first, is that the stricter standards under Rule 60 applied only to final orders, not to interlocutory orders that remained subject to the court's inherent authority. Now, that doesn't help Petitioner. He's never looked to the court's inherent authority because under Bajarro, the court's inherent authority over an ADEA case would not give him subject matter jurisdiction to vacate an arbitration war. Well, it's interesting to me that you raise Bajarro because I'm trying to understand where that is in the question presented in this case, even as you have framed it in the red brief. I was surprised, given our colloquy earlier about the fact that there are two different jurisdictional arguments here, and that this case appeared to be all about the scope of final judgment order or proceeding in Rule 60. That's what you say in your question presented. So, what is this Bajarro argument, like why are we looking at that or caring about that in this context? This court should care about it because it goes to the lower court's jurisdiction under this court's decision in Bender versus Williamson. I understand, but we didn't take the case to decide that basis for jurisdiction, right? The same, of course, was true in Bender versus Williamsport Area School District. This court has an independent obligation, even if I were prepared to concede jurisdiction, it has its own obligation to assure itself of its jurisdiction and those of the courts below. Why didn't you put that in the question presented that you presented in your red brief? I mean, you led us to believe, by looking at your question presented, that this case was all about Rule 60. So, two points, Your Honor. First is I don't view it as the respondent's job to rewrite the petitioner's question presented, but I think the gravamen of your point is why didn't I raise this in our brief in opposition? And the answer to that is that, candidly, I did not understand or fully contemplate the jurisdictional significance of the petitioner's motion to vacate until we started briefing on the merits. And let's talk about that. But that's down the road, isn't it, Mr. McGill? I mean, you might have a very good argument on Badgera. You might have a very good argument that there is no jurisdiction to vacate the arbitration award. But that's not what's in front of us. What's in front of us is the 60B motion, and that's an antecedent question. You know, one question is, can you bring a 60B motion? The next question is, if you do bring a 60B motion and get it granted, can you do anything with respect to that? Or are you precluded from vacating the arbitration award because of Badgera? So, I've got two points I wanna make in response to that. The first goes to the- But it's just like not the time to be talking about Badgera. Badgera, you might have a lot to say about Badgera in a few months' time. So, let me address it with two points. The first goes to what the motion below actually did, and the second goes to the sequencing SINOCHEM point that has been raised. First is, what did the motion do? It starts at page 24 of the Court of Appeals Joint Appendix. It's a motion to reopen and to vacate the arbitral award. The only relief it requests is to vacate the arbitral award, and it does not ever request to reopen, actually, the existing federal claim. And the reason we know that is the only other aspect of relief it requests is to appoint a new arbitrator to adjudicate that claim for relief. So, the only thing the motion does is to seek to vacate the arbitral award. It's seeking to use Rule 60B as the jurisdictional hook to do that, something that the case itself could not do. So, that's the first point. What does the motion do? The district court then breaks it apart into two separate orders. It says, I'm reopening under 61, 60B1 and six, and then it says, under the FAA, later, I'm going to vacate the arbitral award. So, you have, the only request that's ever been made is to vacate the arbitral award. That's the relief that requires subject matter jurisdiction. The relief that's being requested requires its own form of subject, its own basis for subject matter jurisdiction. The only basis presented is Rule 60. That is not sufficient under Kokkonen. Second, the sequencing point. The Court of Appeals refers to this as a jurisdictional issue, but I don't think that's correct. We know that because under Rule 82, the availability of Rule 60 relief could not expand or contract the district court's statutory jurisdiction. When the Court of Appeals was referring to subject matter jurisdiction, what it really was referring to was the long history that a court could not, lacked power to set aside or otherwise interfere with a plaintiff's voluntary dismissal. It used a sloppy label in calling it subject matter jurisdiction, but the availability of Section 60 relief really is like the question in Steel Company whether a plaintiff's particular claim is available under the statute. So, we don't think Sinochem sequencing actually is available here. It's more like Steel Company, where the jurisdictional question has to come first, and there's simply no answer to the fact that the only basis- I don't understand that at all. I mean, after, I appreciate that the request seemed to merge the two, but once the district court broke them apart and issued two separate orders, and the rest of the way, there was a challenge as to whether or not the district court properly granted a motion to reopen, and that was the thing that this court took cert on, I don't understand why it necessitates us to care about whether the district court was right with respect to its other order. Justice Jackson, it's because the motion to reopen had sought no relief on a claim. I understand what it sought. What I'm suggesting is that that claim could never have been responded to by the district court until it had the ability to do something, and so as a threshold matter, the district court said, this is a closed case. I would have to reopen it to give you the relief that you seek. I'm issuing order number one, reopening the case, and then here's order number two regarding the relief that you seek, and from then on, we all were focused on whether or not the district court made a mistake in determining that this case could even be reopened, and to the extent that that's the issue, that that's what was presented here, that that's what the courts have split on, I don't understand why we can't just isolate that as requested and answer it. I'm not afraid of the question presented, but the jurisdictional point is important here. If the motion had requested some form of relief related to the case itself, if it had been, I want to re-litigate my case and vacate the arbitral award, then at least there would be a request for relief over which the district court originally had subject matter jurisdiction. Mr. McGill, on the first one, as I understand the common law history, courts were considered to have jurisdiction over orders, even final ones, judgments, until the expiration of the term of the court, right? Except with respect to voluntary non-suits, Your Honor. Correct, there's a little bit of, that was the general rule, and I understood 60B to say, well, we don't have terms, we don't do that anymore, but you have a federal question about your judgment and whether it should be reopened that's available to you. If you can meet these really hard criteria, what's wrong with that understanding of 60B? And the jurisdictional point there. 60B, there's, I would think that Rule 60B can't expand itself, the district court's subject matter jurisdiction. No, of course not. But the point was the courts have always had this kind of power to fix injustices in their judgments and their orders, at least during the term of court, got rid of that, but the point should remain, with that change, that they generally do. I think a district court certainly has jurisdiction. If you look at the Beggarly case, the district court has subject matter jurisdiction to entertain an independent action attacking the judgment for massive fraud. And reopen for massive fraud or things like that. Correct. Okay, all right, okay, I think that I got that. And then on final and what does final mean and what it meant in 1946, more importantly, I took it to mean that it's not interlocutory. I mean, that's how blacks defined it, that's how Warren Rogers, that's how the Rules Committee, do you disagree with that understanding? There has to be a conclusive resolution of the issues in the litigation. Okay, I'll take that. Why isn't there at least a conclusive resolution that the petitioner's first non-suit is gone, they don't get another free bite at the apple, right? Voluntary dismissal, the beauty of it is you get another chance any time you want. But you only get one. After that, you have to have leave of court. And here, didn't the district court at least resolve that by saying, you've had your non-suit, you've had your voluntary dismissal. Why didn't it finally, conclusively resolve that aspect of the plaintiff's rights? The, so the dismissal is the retraction of a complaint. It doesn't resolve any issue in the litigation. But you'd agree, though, that the withdrawal, the non-suit, as it used to be called, that does have a consequence in the world. The dismissal has a legal effect. Plaintiff doesn't get another free bite at the apple. He's exhausted his one free bite. I guess I would phrase it a little bit differently, Justice Gorsuch. I would say if he chooses to file a second suit and dismisses that second suit, then that disposition under the Rule 41 would be with prejudice. But that is an external circumstance. Would that amount to a final something for your purposes? A dismissal with prejudice under Rule 41? Well, the second time, say he withdraws again, the second time. Yes. So that would be. So if he voluntarily withdrew again, and therefore out of luck. May I just elaborate why? Yeah. Because it's a conclusive resolution. It's an adjudicate, it operates under the rules as an adjudication on the merits. It resolves everything. Correct. I got that. We would say it's a proceeding. I understand that. So why isn't the first one a proceeding when he's exhausting his one free non-suit? Because it has to be a final proceeding, and there's no finality. Because there's no conclusive resolution of anything he can refile in any court at any time. But I would turn also back to the point that the finality here has to have the same definition and same scope as that that applies to final decisions under 1291. Otherwise, the notice of appeal tolling requirements make no sense. And otherwise, litigants will be able to bootstrap themselves into appeals of otherwise unappealable orders. I would like to just address the California law point, because it has been suggested that the 1937 enactment of Rule 60 somehow incorporates the Corpus of California decisional law. There's no indication of that in the advisory committee notes itself. And of course, California law does not and has never controlled the federal court's ability to review its own judgments. That has always been a matter of federal law. It goes back to Chief Justice Marshall riding circuit in North Carolina in 1803 in Marsh v. Murray. We cite that case in our brief, and the petitioner has no response to it whatsoever. He cites two California Supreme Court cases. They're both worth noting. The Palace Hardware case is a dismissal with prejudice. So it would be final even under the 1946 definition. And the Stonecipher case, he cites, says a proceeding covers any step in the action, seeking court action. A dismissal without prejudice, a non-suit, is the opposite of that. It is a retraction of your complaint. It is saying, I don't need relief from the court anymore. What if that's done mistakenly? I mean, suppose we have a situation in which a person files a suit, and then they file a Rule 41 unilateral dismissal, say a week later, on a Monday. And on Tuesday, counsel rushes back to the court and says, oh my goodness, I made a mistake in filing this notice of voluntary dismissal. I did it in the wrong case. Is it your position that the court really has nothing, they couldn't reopen the case under those circumstances? Any relief would not come under Rule 60B. Of course, the primary relief-  Because it wasn't a proceeding? Because it's not a final proceeding. Okay. And there's no burden that is being imposed on the litigant for the court to relieve, because under your hypothetical, the plaintiff can simply refile his action. Well, but he's lost his one free non-suit, and because of his attorney's malfeasance and mistake, I mean, it could be fraud even, and it can meet all the 60B criteria, but the judge would be powerless under your theory to do anything about it. That's always been true going back to 1803. The real question here is whether Rule 60 did anything to upend that settled practice. There's no indication of that whatsoever. It certainly wouldn't come out of California law. All the petitioner has to point to in that is the Salazar case, which is a single decision of a single intermediate appellate court in California. That is not old soil that gets transplanted into the federal garden. The language of the rule does mirror the 19, does mirror the California statute. It also mirrors the New York statute and the Minnesota statute that are also cited in the advisory committee notes. So there's no indication here that the rules committee, this court, or Congress ever intended to be bound by California decisional law going out into the future. The last point I want to make is just with respect to, actually two points I want to make. One is the argument that this dismissal without prejudice would constitute a judgment. Judgments is defined, a judgment is defined by the federal rules of civil procedure in Rule 54. It is a definition that applies in these rules. The petitioner has no answer to that. The dismissal without prejudice clearly is not a Rule 54 judgment. Finally, the question, Justice Sotomayor, you asked what would be a final proceeding here? The key point is first, the proceeding is meant to cover the small sliver of conclusive actions, conclusive dispositions that are not themselves judgments or orders. So what might that be? A writ of habeas corpus, proceeding supplementary under Rule 69 with respect to the execution of a judgment, condemnation proceedings under Rule 71.1. These are- They all end up in a judgment or an order. That may be true today, but it wasn't necessarily true in 1937, and it wasn't necessarily true going out into the future. The rules could change in a way. And in fact, you have Rule 53 masters when they're consented to be final. A ruling could be consented to as final. There's no actual necessity for a court order. It's better practice. The problem with all of that is it's that they all end up, all of those separate proceedings end up with the court doing something. And I think what the use of proceedings, both in the California Code and in Rule 60 is meant to do is to pick up those conclusive dispositions that for one reason or another are not under the heading of a judgment or order. It's not intended to swallow every order and every judgment. Our reading of the rule- Thank you, counsel. Nothing further, Justice Thomas? Justice Alito? More? Justice Barrett? Justice Jackson? Thank you, counsel. Thank you. Rebuttal, Mr. Levy? The respondent is proposing a rule that would render a court without any authority to remedy an issue of outright fraud or mistake leading to the dismissal of a case, albeit without prejudice, but that causes the plaintiff to lose its right because of a limitation or otherwise. And that also leads to the loss of the right to bring a non-suit in a second case. That cannot be what Rule 60 was intended to capture. There is no evidence of that in the text or the advisory committee notes or the California decisions. The California decisions were clear on point. They're also in accord with the weight of authority among the states. That's reflected in the decision of the Supreme Court of Connecticut in the Lucis decision, which cites not only California for this point, but also New York, which is one of the statutes that is cited by the Rules Committee. But Professor Moore did say that the court, that that was the inspiration and that that meeting does come with it. My friend has said that there is nothing to relieve a moving party from in the context of without prejudice dismissal. That is not true beyond the right to, again, I don't want to repeat myself, but the limitation periods would be one example and the right to bring another case with a non-suit could be another. And unless the court has questions. Thank you. Thank you, counsel. The case is submitted.